Good morning. May it please the Court, Michael Tanaka, Pirin Lumbia, Mr. Mohamed. In this case, Mr. Mohamed received a sentence of five years, where the low end of his guidelines was 12 months. That guideline range already included a four-level enhancement for substantial disruption of government function. In effect, he received a sentence that was 11 levels above what his guideline range was. Even post-Booker, that sentence was clearly unreasonable. This Court has just set out the process that we must use in reviewing a sentence post-Booker for reasonableness, and that's a two-step process. First, the Court looks at the guideline calculation to make sure that's correct. Kennedy, are you talking about the Cannes trial case? Yes, Your Honor. If the guideline calculation was incorrect, then the case has to be remanded, irrespective of whether the sentence might otherwise be reasonable. If this Court finds that the guideline calculation was correct, then it does a further review for reasonableness. Under either of those two steps, this sentence was unreasonable. First, the effect of eight-level departure that the district court imposed is insupportable under this Court's case law. It's what? Unsupportable. Basically the law basically doesn't support it. Now, you know, under Cannes trial, we're supposed to, as you say, review the guideline determination first, right? That's correct, Your Honor. Now, are we bound by our old case law that says, you know, we — what's a level of review of a departure? Well, many whether, which was decided right around the time of the Cannes trial, which is also cited in that 28J letter, suggests that the standard review for both the extent of departure is now abuse of discretion. Clearly, that doesn't insulate anything from review, but it is somewhat objective. Well, I guess in — you know, in many whether or whatever, it seemed like an incredibly low sentence if you — and I think the dissent pointed that out, but essentially the majority held that it was a legal sentence, and so abuse of discretion is a hard hill to climb for an appellant. And here, is this — the maximum that you could get for what he was charged with, not taking him into consideration, wasn't it like 10 years? The statutory maximum is 10 years. Yes. So he didn't get more than the statutory maximum. So, I mean, it's not — well, but I'm just saying from that standpoint, it's not an illegal sentence that way, right? It's not — clearly not an illegal sentence, whether it's an unreasonable sentence. Well, and the facts are — I think when you're looking at them for reasonableness, the facts are bad for your client in a certain sense in that it's a pretty aggravated situation of what he did in that, you know, post-9-11, he calls in a threat, saying, you know, identifying targets in the L.A. area, numerous targets, and he also, which it clearly comes out, that what he identifies for people as being Al-Qaeda people that — but it turns out they're people he just doesn't like, and he has a grudge against them. So imagine — I guess they get rounded up. The police have to investigate all of these things to make sure that L.A. isn't going to blow up. And I think the court was concerned, saying, you know — well, the government certainly argued, we need to send a message to someone that would unleash this kind of vengeance against an innocent individual and put them — you know, cloak them as Al-Qaeda and then also cause law enforcement to come to a standstill in terms of — to make sure that, you know, the West Coast isn't going to fall into the ocean. So, I mean, it is — It's somewhat overstated. Well, I know, but I'm just saying, you know, in terms of when you have to talk about — you know, the government basically argued it that way. And so it — We're still not untethered, though. Obviously, in terms of bomb threats, this one was more aggravated than your normal bomb threat. Right. And the guidelines account for that by giving a four-level enhancement for that. And so this guideline included that four-level enhancement for a substantial disruption. Now, you could argue that this went beyond a substantial disruption. This was a doubly substantial disruption. So we give them another four levels. But even though the guidelines aren't mandatory, they do still provide a signpost for what is reasonable. And this Court's — and our circuit cases say that we start with the guidelines still. So even though the judge was not bound by the guidelines, he still had a duty to consider them. And if a substantial disruption is worth four levels, then what about this case later at 11-level? I think Judge Fletcher has a question. It's hard to hear that. I'm sorry. He did consider the guidelines. And he talked about where the guidelines would take him with the segrevation. Then he says, that's not enough. This is an egregious case. Not only what he did, but the consequences of what he did. It's very hard for me to say that the judge didn't consider everything. He did consider the guidelines. He did consider what the guidelines departure would take him to. And then he says, you know, this is not a heartland case. This is way beyond that. And how can we fault him and find that he was unreasonable? I would agree that the judge had a basis to find that this wasn't a heartland case. But you still need to tether somehow this analysis to some kind of objective factors. It can't be just that the judge feels that this case is very egregious and we're going to give him a whole bunch of time. There has to be some specific factors that are tied to amounts of time in some, at least some general way. That's why I suggest that the guidelines provide a signpost. We get a four-level for substantial disruption. We get six levels if he intended to carry out a threat. And there are cases from around the country that both invoke 9-11 and in cases where defendants have intended to carry out threats who receive sentences substantially less than this. A sentence even double what the guidelines called for would still be a substantial sentence, but would still be substantially less than what he got here. They're just past. When this Court reviews reasonableness, I submit you can't just throw up your hands and say, well, he had some reason to do it, therefore it's okay. And he gave the, he talked about the factors in the Sensing Statute about 3553A. He talked about deterrence. He talked about the need for a serious sentence. But those are generalities. And in almost any case, one could frame an argument for any specific sentence in those types of words. But this Court still has a duty to meaningfully review that. And again, I suggest that you can look at the cases cited in the briefs, both by the government and by appellant, as typical examples of what happens in cases that are outside the heartland. Do you want to save any time for rebuttal? Yeah, I'll save a couple minutes. Well, you only have a minute and 41 seconds. Well, I'll save it. All right. Thank you. May it please the Court, Eric Silver on behalf of the United States. The standard review, at least for the initial departure decision under many, whether it is abuse of discretion now. We've gone back, as the Supreme Court made clear in Booker, from the de novo standard review under the Protect Act back to the pre-Protect Act standard, which is abuse of discretion. Looking at what the Court did here, I think it's first to recognize that the guideline provision that applied to A6.1 is not a bomb threat based guideline provision. It's any threats, and it's specifically designed as a threats between two people. That's what the district court noted in the Harrell case, and that's what that provision is designed for. And in fact, here, based solely on the base offense level and acceptance of responsibility, defendant would have faced a six to 12 month sentence. There's then a four level enhancement for causing a substantial disruption, and that's to government, public, business, or business functions and services. That increases, in this circumstance, defendant's sentence six months from the six to 12, the 12 to 18 months. And that provision, again, it's in the alternative. It's not all of those factors are present, that provision applies. It's any of those factors are present, that provision applies. That's six month enhancement. Here, there wasn't simply a business disruption. There wasn't simply a disruption in government services. There was also a disruption of the public, and the court took that into account in the district court. If you give the four level enhancement, for example, simply for the business disruption, and it's clear that this threat targeted business disruption because it said that the bomb threat would take place at, the bombing would take place at malls. I mean, it was inherently a business related activity. Well, if you account for that activity under the four level enhancement, first of all, you've only accounted for substantial disruption and not an extraordinary business disruption, which the court indicated applied here. But that doesn't account at all in that four level enhancement for the severe disruption of government functions in this case. It doesn't account at all for the fact that there were a hundred, approximately a hundred agents involved in this case. That's both within and without the United States because this case involved both Canada and the United States. There were agents throughout this country. There were, the State of California was involved. The local police, fire, sheriff's department were involved. Mr. Silber, here's what I think would be useful, at least for me, for you to address. You know, granted all that, you know, it seems to me that Judge Anderson took all that into account in his guideline departure. But then he went on to add a, I'll call it a non-guideline departure. And it seems like he relied on the same factors. In other words, you know, he sort of double count those things. Now, it seems to me something's wrong with, you know, giving additional departure based upon the same reason. Can you address that argument? I actually think there's two responses to that. The first would be that I think the court did rely on some different factors. And I think the second is that under Booker, the court is entitled to give its own weight to the considerations in 355-3A. And I'll turn to the first. But presumably, he weighed all those things in, you know, in coming to the guideline departure. Well, I would respectfully disagree to some extent. I mean, I do think that a con- At least from the record, it seems he has. Well, I think a conscientious district court judge following what this court has indicated and can travel in many weather would consider the extent of the departure in light of the reason for departure under the guidelines. But nevertheless, under 355-3A, I think the district court can say, I think the need for general deterrence in this case is stronger than what's reflected in the guidelines. And I think the nature of the offense is more serious than what's reflected in the guidelines, even with the departure, and it's appropriate in that circumstance to give a different sentence. I note in many weather, for example, this court noted, because it applied harmless error analysis to the consideration, but it noted if a family circumstance departure wasn't available under the guidelines, nevertheless, the district court could weigh the family circumstances under 355-3A1 as part of the history and characteristics of the defendant and come to its own balancing and therefore- You know, that's taking into account a factor that you can't, you cannot take account of under the guidelines. But here, the court is relying on the same factors twice. Well, I think the court is- For two departures. I think the court is saying under the guidelines that it feels like in light of the guideline provision that's there, the heartland for offenses, this is what it feels the appropriate departure would be. It's no different than saying, for example, family circumstances is already taken into account and therefore you can't depart. Because here the court is saying this is all I feel I can depart in light of the guidelines, but I would re-weigh this on my own because, and the court indicated this, it thought the nature of the offense was a significant factor to it and it thought the need for general deterrence was a significant factor to it. I'd also note there were additional facts that relied on that aren't reflected in the departure circumstance. The court noted the defendant's lack of contrition. The court could have accounted for that under the guidelines. I mean, it could have denied acceptance of responsibility based upon that. I don't think the district court abuses its discretion or acts unreasonably by taking that into account instead under 3553A1 and also in the need to protect the public, which is what the court did here. The court noted that the defendant had provided conflicting information to the probation office, including saying that he had no aliases when the record quite clearly indicated that he did have aliases, and the court noted that. The court could have implied an obstruction of justice enhancement for that, but instead, again, took that into account under 3553A in the need to protect the public. And the court also noted defendant's criminal activity and noted that it escalated, even though it is clear from the record he had no prior arrests and, therefore, he was in criminal history category one. Now, the court could have taken that into account by giving an upward departure in criminal history category, but the court, again, took that into account by saying that there was a need to protect the public. If the court had taken those three factors into account under the guidelines rather than under 3553A, defendant actually would have been in a higher category than what he is now. So I don't think, even apart from whether the court was permitted to reweigh the factors itself, I think what the court did here would have been appropriate, based on the additional facts it relied on, because I don't believe that those facts are within its departure decision. That's not what the court indicated in ER 48, supported the eight-level departure that it gave. So I think the court instead focused on the substantial disruption to government services, it focused on the need for general deterrence, the seriousness of the offense in light of the September 11th, and it focused on the victimization of all of Los Angeles from this threat, and it focused on the four victims in particular. But I note, just a further point, that the last two factors are not reflected at all in defendant's guideline range here. I mean, those factors are in What happened to those four people? Well, we do know from the record that their lives were disrupted. That's in the declaration of the agent in this case. They were subject to intense scrutiny, and they were given interviews, some on multiple occasions. And the court relied on those facts in holding, the defendant accomplished his purpose here. His purpose was to disrupt the lives of these individuals, and that's exactly what happened. And that is a permissible basis for departing, and it's a permissible basis in the kind of mix that the court relied on for the eight levels. I mean, I think if you look at the Berriese case, that was a critical component in that case, particularly when you compare it to the Harrell case. In Berriese, the defendant had said that a worker where his girlfriend worked was involved with or knew of the 9-11 attacks that both impacted the victim and caused wasted government efforts. If you look at Harrell, by contrast, and that results in an eight-level upward departure there. In Harrell, by contrast, you had the same waste of government efforts, but you didn't have the victimization. In that case, the defendant made a hoax threat. It didn't involve anyone else, and the district court gave no departure. So I think that shows the importance of when you accuse someone else of being a terrorist, and in particular an al-Qaeda terrorist, that's a serious harm to that individual, warranting a serious departure. And here, unlike Berriese, when you got the eight-level with alleging as to one person, here you have four people. And so I think it was an appropriate consideration. If the panel has no further questions, the government would submit. Thank you for your argument. A couple of quick observations. The harm to the four individuals that were named in this threat was really, I won't say trivial, but it was not substantial. The declaration attached to the government's sensing position says that they were under intense scrutiny. But unlike Berriese, the case that's cited just by the government, it wasn't a case where the general public knew that these people had been accused as terrorists. They were privately questioned, presumably. And unlike Berriese, where the man's life was disrupted because the FBI agents came to his store and everyone thought he was a member of al-Qaeda, there's nothing in this case to suggest that. So the magnitude of the harm is totally different. Which brings me to my last point, and that is, unless this Court somehow establishes some types of objective standards to review these types of senses, then what we're going to do is we're going to have to go back and look at the case. And what we're going to have is we're going to have a violation of the other part of 3553A, which is that there's going to be unwarranted sense disparity. That is — Well, but don't we risk if, when you're saying some sort of objective standards, I mean, we can't substitute our judgment for the judgment of the sentencing judge. And, you know, that's —  There's no other case where the judgment of the sentencing judge, which involved a substantial departure, eight levels, was at least tied, and this Court's review was tied, where they said four levels would be appropriate for this and four levels would be appropriate on this ground. That brings us to eight levels. So there was at least some reference, objectively, to factors that you could almost quantify. And the Court also said in many ways that the district court had to explain this decision enough to permit review. In this case, that other than mouthing just general, this is really bad, there isn't that kind of specific tying of what it is that makes this case aggravated to what it is that warranted a sentence that was five times what the guideline range would have been, and in the absence of that, the sentence was unreasonable. Thank you for your argument. This matter will stand submitted. The Court's just going to take a short recess before the last case. We'll just be five minutes, so we'll be back on the bench at that time.
judges: B. Fletcher, Tashima, Callahan